UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| PETER TINKHAM, et al., | ) |
| | ) |
| Plaintiff | ) |
| | ) |
| v. | ) 1:12-cv-00229-GZS |
| | ) |
| LAURA PERRY, et al., | ) |
| | ) |
| Defendants | ) |

**RECOMMENDED DECISION ON**
**DEFENDANTS' MOTIONS TO DISMISS (ECF Nos. 29, 40, 42, 43)**
**AND PLAINTIFFS' MOTION TO AMEND (ECF No. 81)**

Peter Tinkham and Juliet Alexander, husband and wife, have brought suit against Alexander's mother, brother, sister, and an attorney from Maine. The current operative complaint is a nine-page document filed in the United States District Court, District of Massachusetts, on May 18, 2012. In it the plaintiffs allege that the defendants engaged in a fraudulent scheme, breached fiduciary duties, and intentionally inflicted emotional distress on the plaintiffs. The underlying dispute relates to a family camp that may have been an outright gift to Alexander from her mother or may be subject to a mortgage from Tinkham and Alexander to her mother. The defendants have filed motions to dismiss. The plaintiffs in turn have filed a motion to amend, seeking to belatedly invoke this court's federal question jurisdiction. The court referred the motions. I now recommend that the court grant Attorney Boothby's motion to dismiss pursuant to Rule 12(b)(6), deny the plaintiffs' motion to amend, grant Nina Perry's motion to dismiss for lack of personal jurisdiction, and otherwise grant in part and deny in part the remaining motions. [1]

---

[1] What remains under this recommendation, if it is adopted, are the state law claims of fraud, intentional infliction of emotional distress, and breach of a fiduciary duty against Alan Perry and Laura Perry. There is also a

## PROCEDURAL HISTORY

Following service of the complaint, all defendants moved to dismiss the lawsuit.  (Pro Se Motion to Dismiss by Laura and Nina Perry, ECF No. 3;  Motion to Dismiss by Alan Perry, ECF No. 7;  Motion to Dismiss by Clint Boothby, Esq., ECF No. 13.)  The motions raised various grounds.  The mother and sister, Laura and Nina, respectively, moved to dismiss based upon lack of diversity, lack of personal jurisdiction, failure to comply with Rule 8(a) of the Federal Rules of Civil Procedure, failure to meet the particularity requirements of Rule 9(b) of the Federal Rules of Civil Procedure, and failure to state a claim under Rule 12(b)(6).  The brother, Alan Perry, moved to dismiss solely based on the lack of subject matter jurisdiction, claiming the plaintiffs are residents of Maine, not Massachusetts, and that therefore complete diversity does not exist.  Attorney Boothby joined in the brother's motion, and additionally moved to dismiss based upon lack of personal jurisdiction in the District of Massachusetts.  Since both the brother and Boothby are Maine residents, if either Alexander or Tinkham was domiciled in Maine at the time the complaint was filed, complete diversity between the parties does not exist.

The district court judge in the District of Massachusetts determined that the court in Massachusetts lacked personal jurisdiction over the Maine defendants and decided that it was in the interests of justice to transfer the case to the District of Maine, granting in part the motions to dismiss and making no findings regarding subject matter jurisdiction or the sufficiency of the complaints.  (Endorsed Order, July 20, 2012.)  The case arrived in this court with no motions then pending.  The defendants, unsure of their answer deadline and the status of the earlier motions to dismiss, filed a motion to extend time and for clarification.  (ECF No. 25.)  I entered an order clarifying the answer deadline and the pending motions' status.  (ECF No. 26.)

---

counterclaim on the promissory note filed by defendant/counterclaim plaintiff  Laura Perry.   Plaintiffs/counterclaim defendants have filed their answer.

The defendants then responded by refiling their various motions to dismiss in slightly altered format. Boothby first moved to dismiss alleging lack of subject matter jurisdiction and failure to state a claim. (ECF No. 29.) Laura and Nina Perry followed suit (ECF No. 40), as did Alan Perry, joining Boothby's motion on the issue of lack of subject matter jurisdiction (ECF No. 42). Boothby then filed a supplemental motion (ECF No. 43), alleging the complaint was deficient under Rules 8(a) and 9(b), as well as Rule 12(b)(6). These motions were never responded to by the plaintiffs, although for purposes of this recommendation I have considered the response filed in the District of Massachusetts (ECF No. 16) and the supporting affidavits (ECF No. 17 & 18) as they pertain to the earlier filed motions to dismiss.

In the ordinary course of business, the motions to dismiss would have been fully briefed and decided by early October 2012. However, Tinkham and Alexander elected to take an interlocutory appeal to the Court of Appeals relating to the transfer of the case to Maine from Massachusetts, resulting in this court's jurisdiction being divested for approximately five months, until the mandate was returned on February 6, 2013. Since February 1, 2013, the plaintiffs have filed a series of unproductive motions, rather than allowing the court to rule upon the motions that have already been filed and are awaiting decision.

## DISCUSSION

The question of whether this court has subject matter jurisdiction over the litigation must first be addressed before turning to the merits of the complaint.

### A. Threshold Issue: Diversity Jurisdiction

Alexander's mother and sister, Laura and Nina Perry, live in Florida, but her brother, Alan Perry, lives in Maine, as does Attorney Boothby. Domicile for Tinkham and Alexander is a

matter of some dispute because Alexander maintains that she changed her domicile from Maine to Massachusetts shortly before she and Tinkham filed this action.

The diversity statute enables federal courts to hear and decide suits between citizens of different states, provided the amount in controversy is more than $75,000.00.  See 28 U.S.C. § 1332(a).  The proper "vehicle for challenging a court's subject matter jurisdiction," including the domicile of the party invoking diversity jurisdiction, is a pre-answer motion to dismiss.  Valentin v. Hospital Bella Vista, 254 F.3d 358, 362 (1st Cir. 2001).  The party invoking diversity jurisdiction has the burden to prove domicile by a preponderance of the evidence.  Rodriguez v. Senor Frog's de la Isla, Inc., 642 F.3d 38 (1st Cir. 2011).  Domicile is the place where one is present and intends to stay.  Padilla-Manqual v. Pavia Hosp., 516 F.3d 29, 31 (1st Cir. 2008).  It has long been recognized that a party may change his or her domicile at any time.  "Now, it is elementary that, to effect a change of one's legal domicil, two things are indispensable:  First, residence in a new domicil;  and second, the intention to remain there."  Sun Printing & Publ'g Ass'n v. Edwards, 194 U.S. 377, 383 (1904).

To determine whether this court's diversity jurisdiction is properly invoked, the issue is not the party's current domicile, but rather the domicile on the date the complaint was filed.  Melendez-Garcia v. Sanchez, 629 F.3d 25, 41 (1st Cir. 2010);  Lundquist v. Precision Valley Aviation, Inc., 946 F.2d 8, 10 (1st Cir. 1991).  If, on the date the complaint was filed, one of the plaintiffs was domiciled in the same state as one or more of the defendants, diversity jurisdiction is defeated.  See Picciotto v. Continental Cas. Co., 512 F. 3d 9, 21 (1st Cir. 2008) (stating that "the presence in the action of a single plaintiff from the same state as a single defendant deprives the district court of original diversity jurisdiction over the entire action") (citing Owen Equip. & Erection Co. v. Kroger, 437 U.S. 365, 375 (1978)).

"An individual who resides in more than one State is regarded, for purposes of federal subject-matter (diversity) jurisdiction, as a citizen of but one State."  <u>Wachovia Bank, N.A. v. Schmidt</u>, 546 U.S. 303, 318 (2006)  (citing <u>Newman-Green, Inc. v. Alfonzo-Larrain</u>, 490 U.S. 826, 828 (1989), and <u>Williamson v. Osenton</u>, 232 U.S. 619, 625 (1914)).  Numerous factors are relevant in determining whether a party is domiciled in a given state, including "the place where civil and political rights are exercised, taxes paid, real and personal property (such as furniture and automobiles) located, driver's and other licenses obtained, bank accounts maintained, location of club and church membership and places of business or employment." <u>Padilla-Mangual</u>, 516 F.3d at 32 (quoting <u>Bank One, Tex., N.A. v. Montle</u>, 964 F.2d 48, 50 (1st Cir. 1992)).  "[T]he place a person is registered to vote is a 'weighty' factor in determining domicile." <u>Id.</u> (quoting <u>Lundquist v. Precision Valley Aviation, Inc.</u>, 946 F.2d 8, 12 (1st Cir. 1991)).

Rule 12(b)(1) of the Federal Rules of Civil Procedure permits a party to controvert "the accuracy (rather than the sufficiency) of the jurisdictional facts asserted by the plaintiff [by] proffering materials of evidentiary quality in support of that position."  <u>Valentin</u>, 254 F.3d at 363.  Unlike a motion for summary judgment under Federal Rule of Civil Procedure 56, this type of challenge demands "differential factfinding" by the court.  <u>Id.</u>  In conducting this inquiry, the court enjoys broad authority to consider extrinsic evidence and hold evidentiary hearings in order to determine its own jurisdiction.  <u>Id.</u>  While an evidentiary hearing is sometimes the preferred mode of proving a party's intent concerning domicile, and thus diversity jurisdiction, in some cases a party's intent will appear from facts established by documents. <u>Padilla-Mangual</u>, 516 F.3d at 34.  The court has broad discretion to rely on documentary evidence, eschewing an evidentiary hearing, but when it does so a heightened review of its findings will be the result.  <u>Id.</u>

The plaintiffs filed their complaint on May 18, 2012. (ECF No. 1.) Neither plaintiffs nor the defendants have requested an evidentiary hearing on the issue of Alexander's domicile on that date.[2] Plaintiffs did request "jurisdictional discovery" in the Massachusetts District Court (ECF No. 19), but the motion was declared moot when the case was ordered transferred to Maine. (Endorsed Order, July 20, 2012.) The motion did not list what discovery was needed and since the facts regarding domicile are entirely within Alexander's own knowledge and control, I see no reason to reconsider her request for discovery. If an evidentiary hearing had been requested in this case, a credibility issue might have arisen with respect to Alexander's account of her domicile. If the court determines that differential fact finding is required in this case and the parties request an evidentiary hearing, this threshold determination that diversity jurisdiction exists should be rejected and the matter considered more fully after an evidentiary hearing. Clearly in the context of First Circuit cases arising in the District of Puerto Rico, where these sorts of challenges appear common, evidentiary hearings are the preferred mechanism upon which to base the necessary findings.

Documentation submitted by Alan Perry reveals the following jurisdictional facts: (1) as of May 24, 2012, Juliet Alexander was a registered voter in Rumford, Maine. (Aff. Alan Perry, ECF No. 9, 9-1); (2) as of May 24, 2012, Juliet Alexander held a Maine driver's license (ECF No. 9-3); and (3) in May of 2010, Juliet Alexander was a candidate for political office in Rumford, Maine (ECF No. 9-12).

Alexander's own affidavit provides information regarding her lifelong connections with Massachusetts coupled with the fact that beginning in 2002 she obtained "every conceivable indicia of residency in Maine." (Aff. of Juliet Alexander ¶ 31, ECF No. 17.) In 2005 Alexander purchased, apparently with her husband, a second home in Maine, in addition to the family camp

---
2

at the center of this dispute.   (Id. ¶ 39.)   According to Alexander, since 2008 and her daughter's completion of secondary school, she has permanently resided in Sharon, Massachusetts, but retained contact with Maine because of the restoration of certain houses she owns within the State.   (Id. ¶ 42.)   She admits she claimed the homestead tax exemption in Maine from 2008-2010 and that in 2011 she signed a court complaint alleging that she "resided" in Maine.   (Id. ¶¶ 45-46.)   According to Alexander, her epiphany regarding her bona fides relating to Massachusetts occurred in 2011 when her daughter graduated from high school in Post Falls, Idaho (id. ¶ 49) and she acted on it by closing her second house in Rumford, Maine in November 2011, relinquishing her Maine tax rebate for the 2011 tax year, opening a bank account in Sharon, Massachusetts in January 2012, and registering to vote there in May 2012 (exact date unknown because voter registration card was not submitted with affidavit).   (Id. ¶ 48.)

As confused as Alexander's jurisdictional facts are, I am willing to conclude that she has met her burden of proving  her domicile had settled in Massachusetts by May 18, 2012.   What is rather troubling, of course, is Mr. Boothby's motion to dismiss filed in this court on August 6, 2012.   Accompanying that motion is the affidavit of Jason P. Donovan (ECF No. 29-1) and a notice of appeal filed in the Maine Superior Court in South Paris, Maine, on June 15, 2012, and signed on June 14, 2012.   In that notice of appeal Tinkham[3] provides his Easton, Massachusetts post office box address to the court, but Alexander lists her address at 347 Pine Street, Rumford, Maine.   This fact is entirely consistent with the historical record of Tinkham and Alexander maintaining separate domiciles even though married.   Apparently more than a year after her epiphany at her daughter's high school graduation, Alexander continued to identify herself by using her address in Rumford, Maine, when it fit with her litigation strategy.

---

[3]       That Tinkham's domicile is Massachusetts is much more easily established on this record and I will not belabor that point.

In addition to the 2011-2012 litigation in the Maine Superior Court involving an insurance claim for a residence in Rumford, Tinkham and Alexander have previously made other conflicting claims about their domicile in order to further their own litigation interests.  In 2005, both Tinkham and Alexander claimed citizenship in the State of Maine in order to support a claim of diversity of citizenship in federal court litigation in Massachusetts.  (Exhibit N in support of Alan Perry's Motion to Dismiss for Lack of Jurisdiction, ¶ 7, ECF No. 9-14.)  In 2011, Alexander specifically pled her Maine citizenship in a lawsuit brought against the Town of Rumford and others, even though she invoked federal question jurisdiction in any event in that case.  (Perry Exhibit J, Alexander v. First Wind Energy, LLC,, 2:11-cv-00364-GZS, Complaint at 1 (venue allegation), ECF No. 9-10.)  What is most interesting in the First Wind case is that on November 16, 2011, this court received a letter from Alexander asking to change her address to the Easton, Massachusetts post office box used more frequently by Tinkham.  The reason given for the change of address was "emergency surgery scheduled for Wednesday, November 16, 2011, in Boston and will be out of the state for the next several weeks."  (Alexander v. First Wind, 2:11-cv-00364-GZS:  ECF No. 33.)  Her representation to this court in November 2011 is entirely consistent with the notice of appeal she filed in Maine Superior Court on June 15, 2012, and entirely consistent with maintaining her primary residence in the State of Maine. Nevertheless, on this record Alexander's sworn assertion of her intent as of May 2012, as set forth in her original affidavit, has sustained her burden of proving that her domicile was in Massachusetts at the time she filed the complaint.

As for the amount in controversy, Alan Perry argues that even though the value of the camp property exceeds $75,000 and he and his mother have threatened a collection action involving a sum in excess of $75,000, the litigation is really about a much smaller sum because

the plaintiffs appear to be willing to settle if they are reimbursed for seventeen years of property tax, road tax, insurance premiums, and upkeep.  (Perry Motion at 6, ECF No. 8, citing Complaint ¶ 15.)  I conclude that the amount in controversy reasonably includes the value of the camp. Moreover, Laura Perry has filed a counterclaim for over $200,000.  (ECF No. 36.)

**B.     Motion to Amend**

Recently the plaintiffs have moved to amend their complaint to assert federal question jurisdiction.  They claim that federal question jurisdiction arises "from the interstate violation of federal laws governing extortion and fraud."  (Motion to Amend at 1, ¶ 2.)

Under Rule 15(a), leave to amend a complaint should be freely given "when justice so requires."  Fed. R. Civ. P. 15(a).  A motion for leave to amend should be granted absent "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment."  Foman v. Davis, 371 U.S. 178, 182 (1962).  A complaint is futile if, as amended, it "would fail to state a claim upon which relief can be granted."  Glassman v. Computervision Corp., 90 F.3d 617, 623 (1st Cir. 1996).  To determine whether an amended complaint is futile, a court "applies the same standard of legal sufficiency as applies to a [Federal Rules of Civil Procedure] Rule 12(b)(6) motion."  Id.  In order to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic v. Twombly, 550 U.S. 544, 570 (2007)).  As part of this examination, the court must accept as true all well-pleaded factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor.  Gargano v. Liberty Int'l Underwriters, Inc., 572 F.3d 45, 48 (1st Cir. 2009).

After providing a jurisdictional statement that cites certain federal criminal statutes and providing forty-five paragraphs of factual assertions, plaintiffs' proposed amended complaint lists five separate counts.  In count one they claim Laura, Nina, and Alan Perry falsely conveyed an interest in real property to plaintiffs.  In count two they claim "defendants" secretly transferred plaintiffs' interest to a real estate trust and filed a mortgage in Plaintiff Alexander's name in the Franklin County Registry of Deeds without her knowledge or consent.  In count three they claim the Perrys and Boothby acted jointly to enforce the fraudulently filed mortgage instrument and to extort $206,400.00 from them.  In count four the plaintiffs claim that the Perrys and Boothby inflicted extreme emotional distress on both plaintiffs, and particularly plaintiff Tinkham in conjunction with a forged promissory note.  Finally, in count five the plaintiffs claim that Alan Perry, who is alleged to have acted as an attorney for plaintiffs, breached his fiduciary duty to plaintiffs.   With minor alterations, these are the same five counts that appeared in the original complaint.

Other than reciting various federal statutes in their jurisdictional statement, the plaintiffs have done little to clarify upon what basis they are claiming federal question jurisdiction.  All of the statutes they cite, save one, are federal criminal statutes.  As private citizens, Plaintiffs do not have standing to prosecute these criminal provisions.  Davit v. Davit, 173 F. App'x 515, 518 (7th Cir. 2006) (unpublished) (citing Linda R.S. v. Richard D., 410 U.S. 614, 619 (1973)); Gill v. Texas, 153 Fed. Appx. 261, 262-63 (5th Cir. 2005) (unpublished) (same).  Nor have the plaintiffs stated a meaningful claim under the civil liability provisions of  15 U.S.C. § 1692k, the debt collections practices act, the only federal statute they cite which would possibly give rise to federal question jurisdiction.  The only possible defendant who might fall within the federal statutory definition of "debt collector" under 15 U.S.C. § 1692a would be Clinton Boothby, but

the proposed amended complaint does not explain how Boothby allegedly violated the federal provisions.  In fact the only nonconclusory allegation pertaining to Boothby in the proposed amended complaint is that six months after the other defendants told plaintiffs about the recorded mortgage they hired Boothby to attempt to collect the $206,400.00 allegedly owed to them under the promissory note.  Boothby communicated with the plaintiffs and advised them to pay Laura Perry the principle and interest on the mortgage or face legal action.   (Proposed Am. Complaint, ¶ 16.)  Nothing in that allegation states a claim for an unfair debt collection practice.

Based upon the foregoing I recommend the court deny the motion to amend because the proposed amended complaint would be futile in that it fails to allege any basis for federal question jurisdiction.  It appears that plaintiffs' sole reason for seeking this amendment is to avoid dismissal on the diversity jurisdiction issue, an issue which I recommend be decided in their favor.  Based on that fact, I also believe the motion to amend is moot.

## C.      Attorney Boothby's Motion to Dismiss

Attorney Boothby seeks dismissal of Plaintiffs' claims against him for failure to comply with the pleadings standards set forth in the Federal Rules of Civil Procedure.  In order to fulfill the pleading standards under Rule 12(b)(6), plaintiffs' complaint must contain sufficient factual matter to state a claim to relief that is plausible on its face.  Iqbal, 556 U.S. at 663; Twombly, 550 U.S. at 555.  A complaint is deficient "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 557).  It must include "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id.  The factual allegations "must be enough to raise a right to relief above the speculative level."  Twombly, 550 U.S. at 555.  If the factual allegations are too meager, vague, or conclusory to remove the possibility of relief from the realm of mere

conjecture, the complaint is open to dismissal.  Id.  Thus, even in instances where a plaintiff's well-pleaded facts give rise to a "conceivable" claim, if the facts "do not permit the Court to infer more than the possibility of misconduct," then plaintiffs have not shown an entitlement to relief under Rule 8.  Iqbal, 556 U.S. at 679.

In addition, Rule 9(b) of the Federal Rules of Civil Procedure provides that allegations of fraud "must state with particularity the circumstances constituting fraud."  This requirement serves "(1) to place the defendants on notice and enable them to prepare meaningful responses; (2) to preclude the use of a groundless fraud claim as a pretext to discovering a wrong or as a 'strike suit';  and (3) to safeguard defendants from frivolous charges which might damage their reputations."  New Eng. Data Servs., Inc. v. Becher, 829 F.2d 286, 289 (1st Cir. 1987).  The United States Court of Appeals for the First Circuit "has consistently required strict compliance with Rule 9(b)."  Bailey v. Linsco/Private Ledger Corp., 136 F.R.D. 11, 15 (D. Me. 1991). Where, as here, "state law governs the burden of proving fraud at trial, the procedure for pleading fraud in federal courts in all diversity suits is governed by the special pleading requirements of Federal Rule of Civil Procedure 9(b)."  Hayduk v. Lanna, 775 F.2d 441, 443 (1st Cir. 1985);  Siegemund v. Shapland, 247 F. Supp. 2d 1, 7 (D. Me. 2003).   A fraud count that is almost wholly conclusory and lacking in specifics is too vague to meet the Rule 9(b) benchmark. Powers v. Boston Cooper Corp., 926 F.2d 109, 111 (1st Cir. 1991) (internal punctuation and citation omitted).

The only factual allegation made by Tinkham and Alexander against Boothby is that on May 2, 2102, Boothby wrote to the plaintiffs on behalf of his client Laura Perry "demanding [they] pay $206,400.00 to Laura Perry within 30 days or legal action would be instituted against them."  (Complaint ¶ 44.)  On the basis of this letter alone, plaintiffs then state in a conclusory

fashion that Boothby has been part of the alleged conspiracy to defraud and extort the plaintiffs, which fraud allegedly originated 17 years ago.   The plaintiffs' claims against Boothby are devoid of factual basis and, as such, fall far below the federal pleading standards, including those for fraud claims under Rule 9(b).  No court could reasonably find on the sole basis of a demand letter that it was possible, much less plausible that Boothby was active in or part of an alleged conspiracy predating him by two decades. Rather, the plaintiffs' claims against Boothby are "the worst kind of frivolous and speculative allegation calculated to damage the reputation of Defendant Boothby as part of a virulent family dispute."  (Motion to Dismiss at 11.)  Indeed, even though the plaintiffs are unrepresented parties, they are subject to Rule 11(b) of the Federal Rules of Civil Procedure and the pleading they filed appears to skirt dangerously close to a violation of that rule.

Tinkham and Alexander have failed to state a claim upon which relief can be granted and I recommend that the claim against Boothby be dismissed with prejudice.

## D.   Laura and Nina Perry's Jurisdictional Challenge

Laura and Nina Perry, both residents of Florida according to the plaintiffs' own allegations, have moved to dismiss on the ground that this court lacks personal jurisdiction over them.[4]  No party has requested an evidentiary hearing to resolve the issue of personal jurisdiction, and I have chosen to evaluate the personal jurisdiction issues presented using the prima facie method.   Foster-Miller, Inc. v. Babcock & Wilcox Can., 46 F.3d 138, 145-47 (1st

---

[4]      The United States District Court in the District of Massachusetts concluded it lacked personal jurisdiction over any of the defendants based upon their lack of forum based contacts in that jurisdiction.  Obviously this court has general personal jurisdiction over Boothby and Alan Perry, both of whom have systemic contacts with Maine and have not moved for dismissal based upon lack of personal jurisdiction. The Massachusetts judge ordered the case transferred to this forum "in the interests of justice" without making any findings regarding this court's exercise of jurisdiction over Nina or Laura Perry.  Nor did the Massachusetts judge's order on the plaintiffs' motion for reconsideration address the issue of personal jurisdiction regarding the Florida residents, other than to conclude that they had insufficient Massachusetts-based contacts to establish personal jurisdiction in that forum.  (Order on Reconsideration, ECF No. 49-5.)

13

Cir. 1995)).  Under that standard, I "consider only whether the plaintiff has proffered evidence that, if credited, is enough to support findings of all facts essential to personal jurisdiction."  Id. at 145 (quotation marks omitted).  "The facts put forward by the defendant become part of the mix only to the extent that they are uncontradicted."  Astro-Med, Inc., v. Nihon Kohden Am., Inc., 591 F.3d 1, 8 (1st Cir. 2009) (quotation marks omitted).

"To hear a case, a court must have personal jurisdiction over the parties, that is, the power to require the parties to obey its decrees."  Id. (quotation marks omitted).  Personal jurisdiction in a diversity case is evaluated under the law of the forum state.  "In assessing personal jurisdiction over a non-resident defendant, a federal court exercising diversity jurisdiction is the functional equivalent of a state court sitting in the forum state."  Id. at 8 (quotation marks omitted).  The plaintiffs have the burden of demonstrating that Maine's long-arm statute "grants jurisdiction and that the exercise of jurisdiction under the statute is consistent with the Due Process Clause of the United States Constitution."  Id.  Because Maine's long-arm statute, 14 M.R.S. § 704-A, is co-extensive with the due process clause of the United States Constitution, the due process inquiry controls.  Glenwood Farms, Inc. v. O'Connor, 666 F. Supp. 2d 154, 160 (D. Me. 2009).  Due process requires that the defendant have "certain minimum contacts" with the jurisdiction "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"  Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (quoting Milliken v. Meyer, 311 U.S. 457, 463 (1940)).

There are two types of jurisdictional analysis that courts use:  general jurisdiction and specific jurisdiction.  Astro-Med., 591 F.3d at 9.  A court has general jurisdiction over a defendant "when the litigation is not directly founded on the defendant's forum-based contacts, but the defendant has nevertheless engaged in continuous and systematic activity, unrelated to

14

the suit, in the forum state." United Elec., Radio and Mach. Workers of Am. v. 163 Pleasant Street Corp., 960 F.2d 1080, 1088 (1st Cir. 1992). The plaintiffs have made absolutely no showing that Nina or Laura Perry had contacts with the State of Maine that amounted to continuous and systemic activity in Maine, unrelated to this lawsuit. The only activities related to either of them described in the complaint appear to be in connection with their contacts with Tinkham and Alexander, who tells us they are domiciled in Massachusetts, and in relationship to the camp property in Franklin County, Maine. Those contacts do not amount to continuous and systemic activity in Maine.

In this litigation, Plaintiffs' claims are founded directly upon forum-based contacts in relationship to the camp property. A court has "specific jurisdiction" over a defendant when "the cause of action arises directly out of, or relates to, the defendant's forum-based contacts." Id. at 1088-89. The First Circuit analyzes whether the defendant has the requisite minimum contacts with the jurisdiction through three inquiries. Astro-Med., 591 F.3d at 9. First, the Court considers "whether 'the claim underlying the litigation directly arises out of, or relates to, the defendant's forum-state activities.'" Id. at 9 (alterations omitted) (quoting N. Laminate Sales, Inc., v. Davis, 403 F.3d 14, 25 (1st Cir. 2005)). The "relatedness test" is a "'flexible, relaxed standard.'" Id. (quoting N. Laminate Sales, 403 F.3d at 25). As to contract claims, the requirement is met "where the defendants' forum-based activities are 'instrumental either in the formation of the contract or in its breach.'" New Life Brokerage Servs., Inc. v. Cal-Surance Assocs., Inc., 222 F. Supp. 2d 94, 102 (D. Me. 2002) (quoting Phillips Exeter Acad. v. Howard Phillips Fund, Inc., 196 F.3d 284, 289 (1st Cir. 1999)). As to tort claims, the inquiry focuses on "the causal nexus between the defendant's contacts and the plaintiff's cause of action." Astro-Med., 591 F.3d at 9 (quoting Phillips Exeter Acad., 196 F.3d at 289).

15

Second, "'the defendant's in-state contacts must represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's courts foreseeable.'" Id. at 10 (quoting N. Laminate Sales, 403 F.3d at 25).  "The cornerstones upon which the concept of purposeful availment rests are voluntariness and foreseeability.'" Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A., 290 F.3d 42, 61 (1st Cir. 2002) (quoting Sawtelle v. Farrell, 70 F.3d 1381, 1391 (1st Cir. 1995)).

Third, the Court considers whether subjecting the defendant to the court's jurisdiction is reasonable based on several "gestalt factors," including the burden on the defendant, the state's interest in adjudicating the dispute, the plaintiff's interest in obtaining relief conveniently and effectively, the interstate judicial system's interest, and the shared policy interests of the states. Astro-Med., 591 F.3d at 10.  "[T]he weaker the plaintiff's showing on the first two prongs (relatedness and purposeful availment), the less a defendant need show in terms of unreasonableness to defeat jurisdiction." Ticketmaster-New York, Inc. v. Alioto, 26 F.3d 201, 210 (1st Cir. 1994)).

The personal jurisdiction question should be considered separately for Nina and Laura because the allegations related to each of them are markedly different.  The specific allegations against Nina are sparse.  In a number of paragraphs the defendants, collectively, are alleged to have engaged in certain unspecified acts that defrauded and/or caused emotional distress to the plaintiffs.  Those allegations are conclusory in nature and do not provide any factual basis upon which the court could infer Maine-based contact by Nina, especially given the plaintiffs' representations concerning their Massachusetts domicile.  (See, e.g., Complaint ¶¶ 1, 2, 6, 46-49.)  Specific allegations directed against Nina are found only at paragraphs 10 and 39.

16

In the tenth paragraph of the complaint, plaintiffs allege that in the summer of 2011 Nina, along with Alan and Laura, planned the sale of the cottage for their own purposes and benefit. There is no explanation of how Nina would benefit from the sale since there is no allegation that she ever owned the property or held the mortgage.  There is no allegation that this planning took place in Maine or that Nina ever stepped one foot into Maine.  In fact, in the very next paragraph the plaintiffs assert that Laura and Alan made phone calls, sent letters, and paid visits to them. The location and time is not specified, but even if Maine is the presumed locale and the summer of 2011 the appropriate time frame, the factual allegations do not indicate that Nina was involved.  The only other direct reference to Nina is in the thirty-ninth paragraph where it is alleged that Alexander told Alan Perry that she knew that attorney Nina Perry "was obviously behind the forging and filing of the mortgage."  Again, there is no reference to any Maine-based conduct by Nina Perry.  In fact, if this court had personal jurisdiction over Nina, I would recommend dismissing the complaint as to her because it fails to state a viable claim with any factual predicates.  The allegations against Nina are all simply conclusory statements.  For these reasons I recommend dismissal of the complaint as to Nina Perry.

Turning to Laura Perry, the allegations are more factual in nature and also provide the basis for asserting specific personal jurisdiction over her.  The complaint essentially alleges that through fraudulent conduct Laura Perry obtained a mortgage from the plaintiffs for the Maine property in 1995.  (Id. ¶ 1.)  Laura Perry had previously owned the Maine real estate, but transferred it to plaintiffs for her own personal reasons.  (Id.)  The plaintiffs assumed the payments for taxes and upkeep of the property on behalf of Laura Perry, believing they would be appropriately reimbursed.  (Id. ¶ 9.)  After the passage of seventeen years, Laura Perry decided to enforce the terms of the fraudulently obtained mortgage because the property had increased in

value.  (Id. ¶ 10.)  She visited the plaintiffs, wrote to them, and placed calls to them in 2011.  (Id. ¶ 11.)

The claim against Laura arises directly out of Laura's Maine-based contacts.  This lawsuit is about the Franklin County property and Laura's attempt to secure her interest in that property to the plaintiffs' detriment.  The case of Tidwell v. Zawacki, 645 F. Supp. 2d 7 (D. Me. 2009), relied upon by the defendant, is inapposite.  That case was about a Texas business suing a Florida enterprise in Maine because the individuals involved happened to own property in Maine.  The dispute itself was about an unpaid bill for goods received in Florida.  This case is not about Laura Perry's ownership of property in Maine.  In fact, she does not own any Maine real estate.  She alleges, and more importantly the plaintiffs allege, that she holds a promissory note and a mortgage on Maine real estate and that she obtained those documents from plaintiffs.  They allege that she obtained the note and mortgage through tortious means.  Although the plaintiffs claim they are not domiciled in Maine, much of the activity giving rise to the lawsuit arose in Maine.  The court in plaintiffs' domicile has determined it lacks personal jurisdiction over the parties.  Clearly the Florida courts have no compelling interest in determining the outcome of this litigation.  Nor would they appear to have personal jurisdiction over the two Maine defendants.  Both the contract claim and the fraud claims have a nexus to the State of Maine.  Laura Perry has sufficient minimum contacts with Maine so that the exercise of personal jurisdiction over her complies with the constitution.

## E.    Laura and Alan Perry's Substantive Challenges

Finally, I turn to Alan and Laura Perry's arguments raising issues under Rules 12(b)(6), 8(a), and 9(b) of the Federal Rules of Civil Procedure.  The plaintiffs' complaint is not a model of clarity, but because the plaintiffs are pro se litigants, the court will review their complaint

subject to "less stringent standards than formal pleadings drafted by lawyers." <u>Haines v. Kerner</u>, 404 U.S. 519, 520 (1972).  While the relaxed pleading standard for pro se litigants cannot save a complaint against a defendant if the complaint is devoid of meaningful factual allegations as in the case of Boothby and Nina Perry, the allegations against Alan and Laura Perry do not suffer from the same problems.  Plaintiffs allege Alan Perry was instrumental in obtaining their forged signatures on a promissory note and a mortgage and that Laura Perry knowingly mislead them about the legal status of a family property that she originally owned.  These allegations are sufficient to state a claim against them.  As for pleading fraud with particularity, a complaint must specify "the time, place and content of an alleged false representation, but not the circumstances or evidence from which fraudulent intent could be inferred." <u>McGinty v. Beranger Volkswagen, Inc.</u>, 633 F.2d 226, 228 (1st Cir. 1980).  Here, the plaintiffs have adequately explained that there exists a mortgage in Alexander's name, that the document is a forgery, and that enforcement of the document against Alexander would perpetuate a fraud. (Complaint ¶¶ 6-7.)  Laura Perry is pursuing a counterclaim in connection with this document, which appears to be of public record, so it is reasonable to infer that she and co-defendant Alan Perry are able to understand the particulars of the plaintiffs' claim of fraud.  Although it appears that these fraud allegations might better serve as a defense to the collection counterclaim than as a claim supporting the recovery of damages, that is a matter than can better be sorted out in the context of summary judgment.

CONCLUSION

Based on the foregoing, I recommend that the court grant Clinton Boothby's Motions to Dismiss (ECF Nos.  29 and 43).  I further recommend that the Court deny the plaintiffs' motion to amend their complaint to allege causes of action pursuant to 18 U.S.C. § 876 (mailing

threatening communications), 18 U.S.C. § 24 (federal health care offense), 18 U.S.C. § 641

(embezzling public funds), 15 U.S.C. § 2 (monopolizing trade a felony), and 15 U.S.C. § 1692

(pertaining to abusive, deceptive, and unfair debt collection practices).  I also recommend that

the court deny in part the motions to dismiss filed by the remaining defendants (ECF Nos. 40 and

42), but grant Nina Perry's motion to dismiss for lack of personal jurisdiction (ECF No. 40) and

dismiss her from this litigation.

## NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof.  A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

April 2, 2013                         /s/ Margaret J. Kravchuk
                                      U.S. Magistrate Judge