UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | |
|---|---|
| LAURA PERRY, | ) |
|       Counterclaim-Plaintiff | ) |
| v. | )   1:12-cv-00229-GZS |
| PETER TINKHAM, et al., | ) |
|       Counterclaim-Defendants | ) |

**ORDER ON MOTION TO AMEND**

This matter is before the Court on Counterclaim-Defendants' "Motion to Consider Defendants' 2012 Responsive Pleading and 2013 Counter Demand" (ECF Nos. 209 & 228) (hereinafter "Motion to Amend").[1] Through their Motion to Amend, Counterclaim-Defendants request that the Court permit them to assert a claim for the value of services related to the maintenance of the property that is the subject of the matter, for damages allegedly caused by the need for Counterclaim-Defendants to defend Counterclaim-Plaintiff Laura Perry's "frivolous and malicious complaint," and for the costs of their defense. (*Id.*) Following a review of the pleadings, which reflect an extensive procedural history, and after consideration of the parties' arguments, as explained below, the Court denies the Motion.

### PROCEDURAL HISTORY

Counterclaim-Defendants commenced this litigation on May 18, 2012, with the filing of a complaint in the United States District Court for the District of Massachusetts against, among

---

[1] The Court referred the motion at ECF No. 209. A motion to amend is within the magistrate judge's authority to rule on non-dispositive motions. *Maurice v. State Farm Mut. Auto. Ins. Co.*, 235 F.3d 7, 9 n.2 (1st Cir. 2000). The motion at ECF No. 228 is a redundant filing.

others, Defendants Laura Perry[2] and Alan Perry. In their Complaint, Counterclaim-Defendants alleged that Laura and Alan Perry "engaged in a fraudulent scheme to cause [Counterclaim-Defendants] to assume responsibility for the taxes and upkeep of a cottage in Weld, Maine, by pretending to give the subject property to Plaintiff Alexander as her 'inheritance' in June of 1995, in order to hide the true ownership of Defendant, Laura Perry, from her husband." (Complaint ¶ 1, ECF No. 1.) Counterclaim-Defendants further asserted that the property was transferred to a trust with Counterclaim-Defendant Alexander as trustee; that Counterclaim-Defendants soon "understood that they had not 'inherited' anything"; and that Counterclaim-Defendants nevertheless paid the property taxes and maintained the cottage through the years. (*Id.* ¶¶ 4-5, 9.) Counterclaim-Defendants further asserted that Laura and Alan Perry "also secretly saddled them with a mortgage in [Counterclaim-Defendant] Alexander's name as trustee of what was in reality a completely different real estate trust," which mortgage was "filed" to "ensure that [Counterclaim-Defendants] could never sell the property out from under the true owner, Defendant Laura Perry." (*Id.* ¶¶ 6-7.)

According to Counterclaim-Defendants, in the summer of 2011, the Perrys sought to sell the cottage, "aware that the property had increased exponentially," and asked Counterclaim-Defendants to sign over "the deed they did not know they possessed." (*Id.* ¶¶ 10-11.) Counterclaim-Defendants "declined to participate . . . because they had nothing to do with the mortgage and . . . did not own the property." (*Id.* ¶ 12.) Subsequently, Counterclaim-Defendants offered to comply, "provided they were reimbursed for seventeen years of paid property tax, road tax, insurance premiums and upkeep expenses," but the Perrys rejected the offer. (*Id.* ¶¶ 15-16.)

---

[2] Laura Perry is the Counterclaim-Plaintiff. Alan Perry did not assert a counterclaim.

In their Complaint, Counterclaim-Defendants asserted five counts that essentially described claims of fraud, emotional distress, and breach of fiduciary duties. (*Id.* ¶¶ 46-50.) For relief, Counterclaim-Defendants requested "judgment against [the Perrys] . . . for all damages described above, together with interest and costs." (*Id.* at p. 9.)

The District of Massachusetts determined that it lacked jurisdiction over any of the named defendants. *Tinkham v. Perry*, No. 1:12-cv-10893-RGS (D. Mass.) (electronic order dated July 20, 2012) (reproduced on this Court's docket). On July 24, 2012, therefore, the District of Massachusetts transferred the case to this Court.

On August 6, 2012, Alan Perry answered the Complaint, but did not assert a counterclaim. (ECF No. 30.) On August 16, Laura Perry and Nina Perry answered the Complaint. In her response to the Complaint, Laura Perry asserted a counterclaim seeking the enforcement of a promissory note and requesting damages for breach of contract. (ECF No. 36.) Counterclaim-Defendants denied the allegations, and asserted fraud and deceit as affirmative defenses. (ECF No. 46.)

On February 1, 2013, following an unsuccessful interlocutory appeal from the District of Massachusetts' decision to transfer the action to the District of Maine, Counterclaim-Defendants filed a motion for summary judgment. (See ECF Nos. 50, 61, 62.) Due to Counterclaim-Defendants' failure to comply with Local Rule 56(h), the Court stayed further proceedings on the motion for summary judgment pending the final resolution of the motions to dismiss filed by the defendants. (ECF Nos. 67, 72.)

In March 2013, Counterclaim-Defendants moved to amend their Complaint. Through their motion, Counterclaim-Defendants sought to add a jurisdictional allegation regarding the "interstate violation of federal laws governing extortion and fraud," which allegation

3

Counterclaim-Defendants evidently believed would support the transfer of the case back to the District of Massachusetts. (ECF No. 79.) On April 2, 2013, Magistrate Judge Margaret Kravchuk issued a Recommended Decision on Defendants' Motions to Dismiss (ECF No. 83.),[3] which recommendation the Court adopted. In its order, the Court (1) determined that it had diversity jurisdiction, (2) dismissed two of the named Defendants, Clinton Boothby and Nina Perry (the latter for lack of jurisdiction over her person), (3) denied Counterclaim-Defendants' motion to amend, and (4) directed the scheduling of a Local Rule 56(h) conference in connection with Counterclaim Defendants' summary judgment filing. (ECF No. 92.)

The Court did not dismiss all of the claims asserted by Counterclaim-Defendants. In particular, Counterclaim-Defendants' fraud and breach of fiduciary duty claims remained. On May 15, 2013, the Court issued a procedural order scheduling a summary judgment pre-filing conference for June 21, 2013. (ECF No. 93.) Although the Court established a process to govern the summary judgment process, Counterclaim-Defendants failed to file a pre-conference memorandum as ordered by the Court. Instead, they filed a motion for reconsideration. (ECF No. 96.) In that motion, Counterclaim-Defendants asserted that the Court "rubber-stamped the magistrate judge's erroneous conclusions and recommendations, some of which are judicial error bordering on judicial misconduct." (*Id.* ¶ 2.) After the Court denied the motion for reconsideration (ECF No. 97), Counterclaim-Defendants filed their second (ECF Nos. 98) notice of appeal. The First Circuit denied the appeal as an improper interlocutory appeal.

In a June 18, 2013, order, the Court explained that Counterclaim-Defendants' improper interlocutory appeal did not divest the Court of jurisdiction and, therefore, the Court would proceed

---

[3] In their objection to the Recommended Decision, Counterclaim-Defendants argued, in part, that the motions to dismiss were not properly before the Court because the District of Massachusetts denied the motions and, therefore, the motions could not be reinstituted on this Court's docket following transfer. Following the transfer, the named Defendants filed renewed motions to dismiss. (See ECF Nos. 29, 40, 42, 43.)

with the Rule 56(h) conference scheduled for June 21, 2013. (ECF No. 99.) Counterclaim-Defendants failed to appear at the conference. (ECF No. 102.) As a consequence, the Court ordered Counterclaim-Defendants to show cause why sanctions should not be imposed. (ECF No. 103.) In a responsive "Motion in Limine," Counterclaim-Defendants asserted, among other things, insufficient notice, that they reasonably could have assumed that the Court would not proceed with the conference on June 21, and that the Court had no jurisdiction over the case in its present posture. (ECF No. 106.) In another submission, Counterclaim-Defendants acknowledged that they received notice of the conference by mail, but asserted the notice did not give them sufficient time to appear at the June 21 conference. (ECF No. 108.)

Counterclaim-Defendants also submitted a request for the return of the fee paid for their notice of appeal in October 2012. On July 11, 2013, the Court denied Plaintiff's motion for return of filing fee. (ECF No. 114) Also on July 11, after determining that Counterclaim-Defendants had received notice of the Local Rule 56(h) conference before the scheduled date of the conference, the Court concluded that Counterclaim-Defendants had not demonstrated good cause for their failure to appear at the conference. (ECF No. 112.) The Court rescheduled the Local Rule 56(h) conference for July 31, 2013, and, as a sanction, ordered Counterclaim-Defendants to pay for the cost ($266.80) of defense counsels' appearance at the June conference. The Court also advised Counterclaim-Defendants that if they did not want to attend a Rule 56(h) conference, they could withdraw their summary judgment motion. Otherwise, Counterclaim-Defendants were instructed to attend the July 31 conference or the Court would summarily deny their summary judgment motion in addition to other possible sanctions. (*Id.* at 2-3.) [4]

---

[4] The Court also ordered that in the event that Counterclaim-Defendants seek relief from the Court, they must file proper motions and papers rather than groundless filings, otherwise the Court could impose sanctions, which could include dismissal and future filing restrictions (ECF No. 115).

On July 31, 2013, the Court conducted a Rule 56(h) conference with Counterclaim-Defendants in attendance. On that same date, Counterclaim-Defendants filed a second motion in limine. In their second motion in limine, Counterclaim-Defendants objected to the Local Rule 56(h) process. (ECF No. 118) The Court denied the motion in limine. (ECF No. 119.)

On August 20, 2013, the Court received notice that Counterclaim-Defendants had failed to comply with the court-ordered deadline to pay defense counsel the $266.80 sanction imposed for Counterclaim-Defendants' non-appearance at the June conference. (ECF Nos. 120, 121.) By order dated August 29, the Court directed Counterclaim-Defendants to make the payment by September 9, 2013, and to demonstrate good cause for their failure to comply with the Court's prior order. (ECF No. 122.) On September 11, Counterclaim-Defendants filed their Response to Order to Show Cause (ECF No. 123). In their response they suggested, *inter alia*, that they were appealing from the decision on costs. (*Id.* ¶ 9).[5] In addition, they maintained that because they believed that the case might settle and that the sanction would be "deducted," the issue fell "under [Counterclaim-Defendants'] radar." (*Id.* ¶¶ 22, 23.) Counterclaim-Defendants, however, asserted that they "expect[ed] that the court of appeals will set it aside," and did not represent that they would satisfy the sanction. (*Id.* ¶ 27.) Counterclaim-Defendants offered to make an escrow payment to the Court pending review by the Court of Appeals. (*Id.* ¶ 31.) The Court accepted Counterclaim-Defendants' assertion that the failure to pay by the deadline was inadvertent, but declined to act as an escrow agent. The Court thus ordered Counterclaim-Defendants to make the payment no later than October 1, 2013. The Court also issued the following caution:

> To the extent that either attorney has not received payment of the ordered amounts by October 8, 2013, counsel shall file a notice of nonpayment that notes whether [Counterclaim Defendants] have made *any attempt* to provide payment pursuant to

---

[5] Specifically, Counterclaim-Defendants wrote, "What does the Court expect that [Counterclaim-Defendants] would say in response to such an unjust order except to appeal it to the higher court?" (*Id.* ¶ 9.)

this Order. Upon filing of such a notice, the Court will likely dismiss this action based on Plaintiffs' repeated failure to comply with the Court's orders.

(ECF No. 124 (emphasis added).)

Counterclaim-Defendants did not make the payment, but filed a "Motion for Clarification." In the motion, after recounting the history of the situation from their perspective, Counterclaim-Defendants wrote:

> The only reasonable alternative is to respectfully suggest that the court carry out its threat to dismiss [Counterclaim-Defendants'] case and, entering a final judgment, permit the [Counterclaim-Defendants] to appeal the two unfair dismissals and the unfair sanction of cost at the same time and for the same appellate fee.

(*Id.* ¶ 18.)

As a consequence of Counterclaim-Defendants' conduct, on October 10, 2013, the Court dismissed Counterclaim-Defendants' action. (Order of Dismissal, ECF No. 128.) Following the Order of Dismissal, this matter has proceeded exclusively on the counterclaim.

## DISCUSSION

### A. *The Motion to Amend Standard*

Rule 15(a)(1) of the Federal Rules of Civil Procedure permits a litigant to amend a pleading "as a matter of course" subject to certain time constraints. However, when a party seeks to amend a complaint more than 21 days after the filing of a responsive pleading, the other party's consent or leave of court is required in order to amend the complaint. Fed. R. Civ. P. 15(a)(2). In such a case, the court is to grant leave to amend "freely" when "justice so requires." *Id.*; *see also Foman v. Davis,* 371 U.S. 178, 182 (1962) ("In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules

require, be 'freely given.'"). The standard is elevated when the motion to amend is filed after the court's scheduling order deadline for amendment of pleadings. A motion to amend that is filed beyond the deadline established in a scheduling order requires an amendment of the scheduling order. To obtain an amendment of the scheduling order, a party must demonstrate good cause. *Johnson v. Spencer Press of Maine, Inc.*, 211 F.R.D. 27, 30 (D. Me. 2002); *El–Hajj v. Fortis Benefits Ins. Co.,* 156 F. Supp. 2d 27, 34 (D. Me. 2001); Fed. R. Civ. P. 16(b)(4).

A court's decision on good cause "focuses on the diligence (or lack thereof) of the moving party more than it does on any prejudice to the party-opponent." *Steir v. Girl Scouts of the USA,* 383 F.3d 7, 12 (1st Cir. 2004). "Particularly disfavored are motions to amend whose timing prejudices the opposing party by 'requiring a re-opening of discovery with additional costs, a significant postponement of the trial, and a likely major alteration in trial tactics and strategy.'" *Id.* (quoting *Acosta–Mestre v. Hilton Int'l of P.R., Inc.,* 156 F.3d 49, 52 (1st Cir. 1998)). Ultimately, it falls to the court's discretion whether to grant a motion to amend, and that discretion should be exercised on the basis of the particular facts and circumstances of the case. *Id.*

B.   *Analysis*

The ultimate deadline for the filing of amendments to the pleadings was February 18, 2014. (ECF No. 139.) Because their motion is filed beyond the deadline for amendment, Counterclaim-Defendants must establish "good cause" to support their Motion to Amend.

Counterclaim-Defendants have not addressed and thus have not established good cause to justify the requested amendment. In fact, the record before the Court does not support a finding of good cause. Given that the case was initiated in May 2012, Counterclaim-Defendants have had more than sufficient time to attempt to assert any possible claims. Indeed, although the Court dismissed Counterclaim-Defendants' Complaint in October 2013, Counterclaim-Defendants did

not seek to amend their complaint until July 2014, five months after the expiration of the deadline for amendments to the pleadings. Furthermore, the record lacks any evidence to suggest that the proposed claims are based upon newly-discovered evidence or more recent events. The Court thus can discern no justification for Counterclaim-Defendants' failure to file the motion to amend at an earlier date. Finally, as set forth above, the Court dismissed Counterclaim-Defendants' Complaint, in which Complaint Counterclaim-Defendants asserted various claims related to the same property and some of the same transactions that are the subject of the proposed claims in the Motion to Amend. To permit amendment at this stage of the proceedings would effectively allow Counterclaim-Defendants to reassert at least a portion of the claims that the Court dismissed, or to assert claims that should have been asserted prior to dismissal.

## CONCLUSION

Based on the foregoing analysis, the Court denies the Motion to Amend (ECF Nos. 209, 228).

## NOTICE

Any objections to this order shall be filed in accordance with Fed. R. Civ. P. 72.

/s/ John C. Nivison
U.S. Magistrate Judge

Dated this 5th day of November, 2014.